IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOAO BOCK TRANSACTION SYSTEMS, LLC, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 1:11-CV-06472 |
| v. | § § | Judge Harry D. Leinenweber |
| FIRST NATIONAL BANK, ET AL. | § § | |
| Defendants. | § § § | |

**PLAINTIFF JOAO BOCK TRANSACTION SYSTEMS, LLC's
<u>OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION</u>**

COMES NOW Plaintiff Joao Bock Transaction Systems, LLC ("JBTS"), pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois, to oppose Defendants' Motion to Stay Litigation ("Defendants' Motion") (Dkt. No. 259). In support, JBTS provides both its brief, which provides details of its grounds for this Opposition, and a Proposed Order, which respectfully requests that this Honorable Court deny Defendants' motion.

**I.  INTRODUCTION**

Plaintiff Joao Bock Transaction Systems, LLC's ("JBTS" or "Plaintiff") respectfully opposes Defendants American Charter Bank, Barrington Bank & Trust Company, Bridgeview Bank Group, Hinsdale Bank & Trust Company, Lake Forest Bank & Trust Company, Libertyville Bank & Trust Company, Northbrook Bank & Trust Company, and North Shore Community Bank & Trust Company (collectively "Defendants") Motion to Stay Litigation (Dkt.

No. 259). Defendants' Motion is an attempt by Defendants, and indirectly by Fidelity National Information Services, Inc. ("FIS") who has been indemnifying Defendants, to delay the resolution of this litigation. Defendant's basis for this Motion – to halt this case while a separate case filed by Plaintiff against FIS alleging infringement of a different patent proceeds (hereinafter, referred to as the "FIS Case") – is not a sufficient basis for staying this case.

Moreover, a stay of the proceedings is not appropriate at this time. This case has been pending since September 2011. For the most part, Defendants and FIS have been silent, waiting for a claim construction ruling which they hoped would benefit them.

It would have been logical for Defendants to move to stay this case at the same time as FIS's customers moved to stay the Florida lawsuit over two months ago.[1] Even where Plaintiff filed its earlier (now withdrawn) Motion to Stay, Defendants decided to not oppose that motion only *after* the issuance of the claim construction ruling.[2] The claim construction order having issued, puts this case on a fast forward track towards dispositive motion practice, expert reports and trial. Staying this case when it is so close to resolution, and after having been pending for over 22 months, in favor of starting anew with the FIS case where no scheduling conference has yet occurred, will burden the parties unnecessarily with delay. This case is ripe to push forward and resolve the dispute as between Plaintiff, Defendants and their indemnifier FIS, and to put this Court's vested time and resources to good use. This case will streamline the recently-filed FIS Case in Florida, which lawsuit also involves another patent and many other FIS business products and services.

---

[1] Defendants in the Florida customer lawsuit and the FIS Case are represented by the same counsel as in this case.
[2] Plaintiff corresponded with Defendant and met and conferred on June 19 and 20, 2013, respectively, prior to filing its (now withdrawn) Motion to Stay on June 24, 2013. Defendants did not give Plaintiff a position at that time as to whether they would agree to not oppose the motion to stay. It was only after the Court issued its Claim Construction Order (Dkt. No. 255) that Defendants informed Plaintiff that they would not oppose the motion to stay.

## II. FACTUAL BACKGROUND

Plaintiff filed this lawsuit against a number of banks in the Northern District of Illinois on September 15, 2011. At the time of filing, and for quite some time thereafter, Plaintiff was not aware of any vendor relationship for any Defendant in the action. See Defendants' Initial Disclosures set forth in Exhibit A, B, and C.[3] Certain facts such as the vendor-customer relationships are not publicly known and are only attained through the exchange of discovery. In this case, Defendants' initial disclosures served five months after the lawsuit was filed did not disclose the customer-vendor relationship, and it was not until months later that the extent of the vendor's involvement in the alleged infringement came to light.[4]

Plaintiff is a business that owns patented technology, and the right to use, make or sell that patented technology. Plaintiff has licensed others to make, use or sell the patented technology, which rights are protected by the U.S. Constitution and by law. Plaintiff has not licensed Defendants, nor third party FIS.

The recently filed case *Joao Bock Transaction Systems, LLC v. Fidelity National Information Services, Inc.*, case no. 3:13-cv-00223-J-34JRK (the "FIS Case") (M.D. Fla.), against FIS alleges infringement by FIS's products and services under a different JBTS patent, U.S. Patent No. 7,096,003 (the "'003 patent") (FIS Case, Dkt. No. 1). The FIS Case was filed to address directly with FIS the large number of its infringing services, and to engage FIS directly in a discussion as to this infringement not already in suit elsewhere. The FIS Case is not related to the current action because it involves a different patent and many different services (in addition to those accused of infringing here). Staying the instant case which is now in the late

---

[3] The initial disclosures for these Defendants are similar in that none of them disclose Fidelity National Information Services, Inc. as a person with knowledge or information relevant to the claims and defenses in this case.

[4] While a large part of Defendants' motion to stay is spent dwelling on the fact that Plaintiff went after customers instead of vendors, this type of hindsight argument should be disregarded because there are no facts alleging that Plaintiff knew of the vendor's relationship with the customer at the time of filing.

stages of discovery, for the more complex FIS case where no discovery has been conducted, will waste the time and resources of this Court and the Parties.

For all these reasons, as well as the facts and law set forth herein, staying this litigation is not appropriate and will prejudice Plaintiff and Defendants in this litigation due to inefficiencies and unnecessary delays resulting from such a stay.

### III. STANDARD OF REVIEW

This Court has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" by deciding whether to stay this case. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). However, a stay is "unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Id.* at 257. "In deciding whether to enter such a stay, courts consider the following factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F.Supp.2d 1006, 1007 (N.D. Ill. June 12, 2009), citing *Tap Pharmaceutical Prods., Inc. v. Atrix Laboratories, Inc.,* 2004 WL 422697, at *1 (N.D.Ill. Mar. 3, 2004). The party moving for a stay, in this case Defendants, has the burden of showing that it is warranted. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 09 C 916, 2010 WL 4630833, at *1 (E.D. Wis. Nov. 4, 2010).

"Courts in this district have recognized that when two related cases are pending in separate federal courts, either of those courts may exercise that inherent power to stay the proceedings before it in deference to the related action." *Pfizer,* 640 F.Supp.2d at 1007 (citing *GE Business Financial Services Inc. v. Spratt,* 2009 WL 1064608, at *1 (N.D.Ill. Apr. 20,

2009)); *Whirlpool Fin. Corp. v. Metropolis Capital Group,* 1991 WL 212112, at *3 (N.D.Ill. Oct. 7, 1991).

IV. **ARGUMENT**

    A. **ALLOWING THIS CASE TO PROCEED WILL STREAMLINE THE FIS CASE MORE QUICKLY AND EFFICIENTLY AND WILL BE LESS PREJUDICIAL TO THE PARTIES.**

        1. <u>Resolving this Case Will Eliminate a Subset of FIS Products Early in the FIS Case.</u>

The FIS Case was filed on March 1, 2013 in the Middle District of Florida, Jacksonville Division, where FIS's worldwide headquarters are located (FIS Case, Dkt. No. 1). The FIS Case relates to a different patent[5] and focuses upon infringement of FIS's products and services it makes, offers, sells, and other distributes to customers in the United States. Although there may be some overlap in a few services alleged to infringe between the two cases, the similarities stop there. In the instant case, Plaintiff alleges infringement of online business banking, online personal (retail) banking, bill pay, positive pay, and mobile banking offered with or in addition to these services that have notifications[6] and/or ability of the account holder to control another's authorized use of the account.[7] FIS, by contrast, offers many products and services above and beyond those used by these Defendants which are believed to infringe the '003 Patent. *See* www.fisglobal.com. By way of further example, FIS advertises on its website a video that shows "how a single consumer interacts with 14 FIS solutions throughout the course of a day." (See website picture *infra*).

---

[5] U.S. Patent No. 7,096,003 ('the "'003 Patent").
[6] The account holder receives notifications from the Defendant bank of activity or other transactions on an account.
[7] Defendants' infringement is set forth in Plaintiff's final infringement contentions, served on Defendants on August 9, 2012.



FIS offers solutions for a variety of industries including government, fraud management, governance, compliance and risk, hardware solutions (in addition to software solutions), image solutions, lending, loyalty and rewards programs, mobile applications (not only mobile banking), and NYCE payments network, biller direct solutions, e-payments, document output, credit card solutions, as well as the traditional banking services including commercial treasury, core banking, and ebanking. A brief review of the FIS website demonstrates that these various FIS services apply and are adaptable to a large range of needs in various industries. See www.fisglobal.com/products.

Staying the current case while Plaintiff and FIS litigate a broad range of infringing activity that is well beyond the scope of this case, and inclusive of more services and different industries, just because there is a small amount of overlap in infringing services used by/with the eight Defendants in this case, does not serve the best interests of the parties here. In contrast, a resolution in this case will likely eliminate the need for discovery in the FIS Case as to those same or similar FIS services.

2. <u>The Parties Are Different and Will Be Prejudiced By Having this Case Stayed.</u>

The parties in this case are different as well. The eight Defendants in this case are local, regional banks with a localized interest and upon information and belief, a local customer base. FIS, headquartered in Jacksonville, Florida, is a large, multi-national company with customers all over the United States and the world. As a result of the very different nature of the Defendants' businesses and FIS's business, the breadth and scope of infringement varies as does the breadth and scope of the litigation. The eight Defendants in this case are infringing with online banking and their use of online account services. FIS is infringing through many times that amount of services, and with many other customers. Defendants fail to explain how these eight Defendants will benefit by a delay.

3. <u>The Patents-in-Suit Are Different.</u>

While the '270 Patent is asserted in this litigation, the '003 Patent was initially the only patent asserted in the FIS Case. The '003 Patent is not directly related to the '270 Patent, but both patents share claims for priority to common earlier patents and applications. Defendants' argument on page 7 of its brief asserting that the FIS Case "involves the same patent" is inaccurate and misleading. (Dkt. No. 259).[8] Only by virtue of FIS's manipulation and insertion of the '270 patent in its counterclaims[9] does that case bring into play the "same patent." Regardless, it is more efficient to resolve the claims-in-issue as to the '270 Patent before this Court, especially in view of the recent claim construction order and the anticipated dispositive motion practice that is just a few months away, than to suspend the case so that FIS can use the Florida FIS Case as "do-over".

---

[8] Plaintiff filed the FIS Case alleging infringement of a different patent, the '003 patent. FIS, through its counterclaims, brought into the dispute the '270 patent so that it could make this argument.
[9] Plaintiff responded to FIS's counterclaims with its own counter counterclaim to bring its claims under the '270 Patent into the FIS Case.

4. <u>This Case Is Close to Resolution</u>

This case is more substantively progressed. A subset of FIS's products and services used by Defendants are alleged to infringe the '270 Patent. Both infringement and invalidity contentions have been exchanged among the Parties. Streamlining and paring of issues that will need to occur in the FIS Case with two patents, and many more accused products and services, is already being done within this case on a localized, focused approach. Resolving the disputed issues here as to infringement of FIS's products and services used by Defendants will undoubtedly help streamline the more complex FIS case. Plaintiff is hopeful that early summary judgment motions on the issues of infringement will quickly bring this case to a conclusion.

In the same vein, by resolving the issues in this case which involve only the '270 Patent, this Court's rulings including the recent claim construction order will provide guidance to the Parties and perhaps to the Middle District of Florida when evaluating and working with the '003 Patent in addition to the '270 Patent.

Defendants have not sufficiently proven that staying this case will simplify the issues in question here, and Defendants' ignore the waste of resources and inefficiencies that will result in staying this case.

**B. DISCARDING THIS COURT'S CLAIM CONSTRUCTION ORDER IN FAVOR OF STARTING OVER IN ANOTHER COURT IS A WASTE OF JUDICIAL RESOURCES.**

If for no other reason, this Court should deny Defendant's Motion to avoid wasting the effort spent to construct a thoughtful and thorough claim construction order. Defendants' spend considerable time in their Motion using Plaintiff's own Motion to Stay against it, *See* Defendant, at II.B., but Plaintiff filed this motion when Defendants were opposed to it and subsequently withdrew this Motion a day after it was filed, precisely because six hours after Plaintiff's Motion

was filed the Court issued its claim construction order – significantly altering the stage of this litigation.

While Plaintiff was inclined to agree to stay this case before the Court reached a decision on claim construction, it cannot agree to such now, primarily because of the stage of proceedings has progressed and too much of the Court and the Parties' time and resources are vested, to simply walk away now. *Fujitsu Ltd. v. Tellabs Operations, Inc*., 2012 WL 987272, at *3 (N.D. Ill. March 21, 2012) ("The court has expended a great of effort becoming familiar with this technology…Courts routinely deny motion to stay…when discovery or claim construction (or even claim construction briefing) has been completed and the case is on the verge of trial."). Plaintiff has its eye on resolving this case by early summary judgment motions, or at trial which is expected to be set for 2014. This litigation is simply "too far along the road to justify halting the journey while the [Defendants] explore[s] an alternate route." *Enprotech Corp. v. Autotech Corp*., No. 88 C 4853, 1990 WL 37217, at *2 (N.D. Ill. March 16, 1990).

### C. DEFENDANT'S DELAY IN SEEKING A STAY FURTHER PREJUDICES PLAINTIFF

Defendants' requested stay will delay the resolution of this litigation for the Parties while a non-party deals with a recently filed case against a multitude of services rather than the few in issue here. This stay is not warranted by the circumstances and would unjustifiably delay resolution of Plaintiff's patent rights. *See e2Interactive, Inc. v. Blackhawk Network, Inc.*, No. 09-cv-629-SLC, 2010 U.S. Dist. LEXIS 107036, at *11 (W.D. Wis. Oct. 5, 2010) ("Swift resolution can be particularly important in patent cases because delay might frustrate a patent holder's rights and the value of its patent.").

Plaintiff filed this case almost two years ago. Staying this case for the FIS Case will result in delays and excessive and additional litigation concerning the products and services in

issue here.[10]  For example, Plaintiff would need to again serve infringement contentions on the FIS products and services in issue here (in addition to others).  This waste of time and resources goes against a stay.

Defendants (and FIS) waited over two months from filing for a stay in the *USAmeribank* Lawsuit before seeking one here.  Defendants waited two and half weeks after this Court's claim construction order, prior to bringing the current Motion.  Defendants' strategy in passively engaging in discovery, its non-responsiveness to Plaintiff's requests for discovery from Parties and non-party FIS, and the belated filing of this Motion in the last few weeks prior to the close of fact discovery creates severe prejudice for Plaintiff, and wastes time and resources of this Court and Plaintiff. No further delay is warranted under these circumstances, and Defendants' motion should be denied.

### D. PLAINTIFF HAS COMMITTED NO MISCONDUCT, AND THEREFORE, THE UNFOUNDED ALLEGATIONS BY DEFENDANTS ARE BASELESS, INFLAMMATORY AND DEFAMATORY.

Defendant's misstatements as to past events and other litigations have no purpose before this Court other than to malign Plaintiff publicly by an inaccurate summary of past events which past Defendants had no part in.  See Defendant's Motion, at II.A. Plaintiff did not do anything improper in any past litigation, and vehemently refutes the suggestion by Defendants that it "should have known" facts that were only attainable through discovery. This "red herring" and argumentative language is unjustified, prejudicial and defamatory towards Plaintiff.

Defendants' references to the Texas Litigation are again a one-sided presentation and filtered summary of past events. This type of manipulation of facts to create argument is merely an assertion that Plaintiff "should have known." There is no case law that says Plaintiff should

---

[10] Only recently did the parties' submit their proposed dates in a case management report. (See FIS Case, Dkt. No. 22).  There is no schedule or trial date set in the FIS Case.

have known. Plaintiff requests that this argument of Defendants' Motion to Stay be stricken, as none of it is relevant to any of the factors before this Court for conducting its analysis of whether to stay the litigation.

## V. CONCLUSION

The timing of these two cases is very different, and the schedule in this case lends itself to be the lead case as to a subset of the issues between Plaintiff and FIS (vis-à-vis its customers, the Defendants). Under the current schedule, fact discovery is almost over, trial is expected to be set for some time in 2014, and expert discovery and dispositive motions are scheduled to be completed by December 2, 2013. A resolution here will very likely help resolve the dispute between Plaintiff and FIS (indirectly through Defendants) as to the infringement of the FIS products that are in issue here, effectively streamlining the FIS Case very early in its litigation. This would save Plaintiff and FIS much time and expense in exchanging information and deposing witnesses on at least those same products and services in the FIS Case.

In view of the facts and law set forth herein, Plaintiff respectfully requests that Defendants' Motion to Stay this case be denied.

Dated: July 24, 2013

Respectfully submitted,

/s/ Maureen V. Abbey
Maureen V. Abbey, Pro Hac Vice
HENINGER GARRISON DAVIS, LLC
220 Saint Paul Street
Westfield, NJ 07090
Tel: 908-379-8475
Fax: 205-547-5500
maureen@hgdlawfirm.com

Mark R. Miller
WEXLER WALLACE LLP
55 West Monroe, Suite 3300
Chicago, IL 60603

                    Tel: 312-589-6280
                    Fax: 312-346-0022
                    MRM@wexlerwallace.com

**Attorneys for Plaintiff Joao Bock Transaction Systems, LLC**

## CERTIFICATE OF SERVICE

    I, Maureen V. Abbey, an attorney, hereby certify that on July 24, 2013, I caused to be served PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to all counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) and (E) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                                /s/ Maureen V. Abbey